UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKY PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 1501 |
| | ) | |
| vs. | ) | Judge James B. Zagel |
| | ) | |
| WEXFORD HEALTH SOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORDUM OPINION AND ORDER

Ricky Patterson brought this *pro se* suit pursuant to 42 U.S.C. § 1983, alleging he received inadequate medical care while housed at the Stateville Correctional Center. (Doc. 1.) Presently before the Court are: Defendants Marcus Hardy, Royce Brown-Reed, Darryl Edwards and Jennifer Encarnacion's (State Defendants) motion for summary judgment (Doc. 156.); Defendants Wexford Health Sources, Inc., Dr. Carter, Dr. Obaisi, Dr. Shute, Dr. Schaefer and Kevin Halloran's (Wexford Defendants) motion for summary judgment (Doc. 146.); and Plaintiff's motion for partial summary judgment (Doc. 145.). In addition Defendants seek to strike Plaintiff's 56.1(b)(3)(a) responses (Doc. 177.). For the following reasons, Defendants' motions for summary judgment are granted in part and denied in part, Plaintiff's motion for partial summary judgment is denied, and Defendants' motion to strike is denied.

## Background

Consistent with the local rules, Defendants filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (Docs. 150, 159.) Also consistent with the local rules, the State and Wexford Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their respective summary judgment motions. (Docs.

158, 147.) Each factual assertion in the Defendants' Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement . . . shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Plaintiff also filed a Local Rule 56.1(a)(3) statement of undisputed facts along with his summary judgment motion. (Doc. 145.) However, only two of the five Plaintiff's Local Rule 56.1(a)(3) statements cite evidentiary material in the record and are supported by the cited material. (Doc. 145 at ¶¶ 2-3.). The Court will not consider the three statements that are unsupported (Doc. 145 at ¶¶ 1, 4-5.).

In response to the State Defendants' filings, Plaintiff filed a "response to State Defendants memorandum of law." (Doc. 182.) Included in the response is Plaintiff's response to the State Defendants' Local Rule 56.1(a)(3) statement of undisputed facts. While some of Plaintiff's responses properly include specific references to supporting materials as required by Local Rule 56.1(b)(3)(B), many of the responses do not include citations to support the response; nor do all of the responses indicate whether the Plaintiff agrees with or disagrees the proposed fact. In addition, other responses improperly indicate that Plaintiff is responding to multiple proposed undisputed facts. For example, Plaintiff's response to the State Defendants' statement of material facts 19-21 does not address each numbered statement; instead, Plaintiff addresses the three proposed statements as a group with a page and half of argument. In addition, Plaintiff did not file a Local Rule 56.1(b)(3)(C) statement of additional facts in opposition to the State Defendants' motion for summary judgment.

Plaintiff also filed a response to the Wexford Defendants' motion for summary judgment. Plaintiff's response, included in Document 182, includes argument opposing the Wexford

2

Defendants' motion for summary judgment (Doc. 182-1, pgs. 129-145) and a "statement of material facts" (Doc. 182-1, pgs. 146-147.). Only those statements of material fact that supported by citation to the record shall be considered. Plaintiff did not file a response to Wexford Defendants' Local Rule 56.1(a)(3) statement of undisputed facts.

A district court "is entitled to decide [a summary judgment] motion based on the factual record outlined in the Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and brackets omitted); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1.") (internal quotation marks and alteration omitted). Whether they seek or oppose summary judgment, parties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded. *See Renta v. Cnty. of Cook*, No. 05 C 2995, 2011 WL 249501, at *1-2 (N.D. Ill. Jan. 26, 2011). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are

solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

As to those proposed Defendants' Local Rule 56.1(a)(3) statements that Plaintiff did not properly respond or failed to respond to, the Court will accept those facts as true, viewing those facts and the inferences therefrom in the light most favorable to Plaintiff. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with a local rule, the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Cady*, 467 F.3d at 1061; *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Koszola*, 385 F.3d at 1108-09; *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). That said, the Court is mindful that "a nonmovant's failure to . . . comply with Local Rule 56.1 . . . does not . . . automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that [he] is entitled to judgment as a matter of law." *Raymond*, 442 F.3d at 608 (internal citation omitted).

In light of the above, the Defendants' combined motion to strike Plaintiff's Rule 56.1(b)(3)(A) response is denied.

4

## Facts

Plaintiff is an inmate incarcerated of Stateville Correctional Center. (Doc. 158 at ¶ 1.) Defendant Marcus Hardy was the warden of Stateville during the relevant time period. (*Id.* at ¶ 2.) Defendant Darryl Edwards was the assistant warden of programs at Stateville during the relevant time period. (*Id.* at ¶ 3.) Defendant Royce Brown-Reed was the Health Care Unit Administrator at Stateville during the relevant time period. (*Id.* at ¶ 4.) Defendant Jennifer Encarnacion was a nurse at Stateville during the relevant time period. (*Id.* at ¶ 5.)

Defendant Dr. Ronald Schaefer is a licensed physician in Illinois and served as the Medical Director at Stateville from August 2, 2010, to October 29, 2011. (Doc. 147 at ¶ 2.) Defendant Dr. Imhotep Carter, is a licensed physician in Illinois and served as the Medical Director at Stateville from July 25, 2011, to May 10, 2012. (*Id.* at ¶ 3.) Defendant Dr. Saleh Obaisi, is a licensed physician in Illinois and served as the Medical Director at Stateville from August 2, 2012, to the present. (*Id.* at ¶ 4.) Defendant Dr. Richard Shute is a licensed physician in Illinois and was employed in various roles by Wexford from December 5, 2001, to June 20, 2012. (*Id.* at ¶ 5.) Dr. Shute has never had a regular posting at Stateville but has provided interim physician coverage on occasion at Stateville. (*Id.*) Defendant Kevin Halloran has served as Chairman of Wexford since 2006. (*Id.* at ¶ 6.) Halloran is not a physician, is not licensed to practice medicine in Illinois, and does not provide medical treatment or make medical decisions in connection with his position at Wexford. (*Id.*)

On September 26, 2011, Plaintiff submitted a request through a Correctional Medical Technician (CMT) to be seen by medical personnel for hand pain. (Doc. 158 at ¶ 8.) Plaintiff was scheduled to be seen by a doctor on October 3, 2011. (*Id.*) Plaintiff was seen by Physician's

Assistant Latonya Williams on September 29, 2011. (Doc. 158 at ¶ 10.) Williams ordered an x-ray of Plaintiff's left hand. (*Id.*)

On or around September 30, 2011, Plaintiff injured his hands while exercising. (Doc. 158 at ¶ 7; Doc. 145 at ¶ 2.) Plaintiff believed that a bone or ligament was protruding between his pinky and ring finger on his left hand and the left hand swelled. (*Id.*)

Plaintiff was seen by Dr. Ervesto Aguinaldo on October 3, 2011, regarding his complaint of hand pain. (Doc. 158 at ¶ 10.) Dr. Aguinaldo prescribed Tylenol for Plaintiff's pain. (Doc. 147 at ¶ 11.) On October 4, 2011, an x-ray was performed and interpreted by the radiologist as negative. (*Id.* at ¶ 12.) The negative finding meant that Plaintiff did not have a fracture or any other pathology seen in the hand. (*Id.*).

On November 14, 2011, Plaintiff was seen by Physician Assistant Williams regarding Plaintiff's complaint of continued pain in his left hand and a "lump that swells." (Doc. 158 at ¶ 12.) Physician Assistant Williams noted a 1cm by 1cm lesion that was tender to palpation and mobile. (*Id.*) Physician Assistant Williams discussed Plaintiff's x-ray results with him, recommended the application of heat three times for day for 20 to 30 minutes, and referred the matter to a medical doctor for a second opinion. (*Id.* at ¶ 13.)

Plaintiff was seen by Dr. Dubrick on November 29, 2011, for a physical examination. (Doc. 158 at ¶ 14.) At that time, Plaintiff complained of a persistent tender module on the left hand. (*Id.*) Dr. Dubrick examined Plaintiff's hand and found a pea-sized tender nodule on the fourth extensor with full strength and range of motion in the hand. (*Id.*) Dr. Dubrick assessed Plaintiff as having a benign post-trauma tendon cyst. (*Id.*) Dr. Dubrick planned a conservative management for six months and planned to recheck if symptoms and concerns persisted. (*Id.*)

6

On November 30, 2011, Dr. Dubrick noted that Plaintiff was still complaining of pain to the back of his hand with palpable mobile nodule enlarged. (*Id.* at ¶ 15.) He assessed Plaintiff with a left hand extensor ganglion cyst and prescribed Ibuprofen 600 mg, twice per day for 10 days. (*Id.*)

A ganglion cyst is a sac-like structure of jelly-like fluid that typically forms on top of a joint or covering of tendon (tissue that connects muscle to bone). (Doc. 158 at ¶ 16.) Ganglion cysts most commonly occur on the back of the hand, at the wrist joint, and can also develop on the palm side of the wrist. (*Id.*) The cyst may appear over time or suddenly, may get smaller in size, and may go away. (*Id.*) A physical exam is typically all that is needed to diagnose a ganglion cyst. (*Id.*) A ganglion cyst is a benign condition that typically does not require surgical removal and may resolve on its own. (*Id.*)

On February 6, 2012, Dr. Dubrick saw Plaintiff in the asthma clinic. (Doc. 158 at ¶ 17.) He noted that the previously seen tendon sheath cyst was enlarged. (*Id.*) However, Dr. Dubrick continued to advise no further intervention as the condition was benign and unlikely to benefit from surgery. (*Id.*) He noted that pain was minimal and did not affect present functionality. (*Id.*) Dr. Dubrick planned for a recheck in four months if requested by Plaintiff. (*Id.*) Plaintiff was seen in the HCU on matters unrelated to his hands on June 8, 2012, August 24, 2012, October 3, 2012, October 11, 2012, and February 15, 2013. (*Id.* at ¶ 18.) During Plaintiff's February 15, 2013, asthma clinic appointment, Dr. Obaisi noted that Plaintiff had clear lungs and good control of his asthma. (Doc. 147 at ¶ 18.) No complaints were made regarding Plaintiff's hands and no swelling or cysts on either hand were apparent to Dr. Obaisi. (*Id.*)

On August 10, 2013, Plaintiff was seen by a nurse for a complaint of feeling "clicks" in his left wrist. (Doc. 158 at ¶ 19.) The nurse found no swelling, no ecchymosis, no redness, no

bruising, and there was no tenderness on examination. (*Id.*) The nurse assessed Plaintiff with joint pain, counseled him to apply cold compresses every 12 hours and then apply warm moist packs as necessary, and gave him Ibuprofen. (*Id.* at ¶ 20.) The nurse did not make a referral to a physician. (*Id.*) Plaintiff was instructed on the use of medication and the hot/cold packs; advised to avoid lifting, sports, or strenuous activity until the area had healed and was pain-free for two weeks; and was told to follow-up with a physician if the symptoms failed to resolve within five days or if the symptoms worsened. (*Id.* at ¶ 21.)

Doctors Obaisi, Carter, Shute, and Schaefer opine that Plaintiff's ganglion cyst or cysts resolved on their own and that no off-site evaluation was medically necessary. (Doc. 158 at ¶ 25.) Dr. Obaisi opines that Plaintiff's ganglion cyst most likely resolved itself by February 15, 2013, but certainly was resolved by August 10, 2013. (*Id.* at ¶ 26.) Plaintiff does not have and never has had a bone or ligament protruding from his hand or hands during his incarceration at Stateville. (Doc. 147 at ¶ 27.) Plaintiff avers that he did not receive all of his pain medications or the warm/cold packs and that the pain in his hands continues to present day and he has not received proper medical care for the ongoing pain. (Doc. 182, Exhs. C, D, E, J and M.)

Plaintiff spoke with Encarnacion on the same day he injured his hands while she made her rounds through his cell house. (Doc. 158 at ¶ 27.) Plaintiff does not remember if he talked to Encarnacion more than that one time. (*Id.*) Plaintiff avers that he informed Brown-Reed, Hardy, and Edwards about his alleged lack of medical care for his hands through letters and grievances. (*Id.* at ¶¶ 28-31.)

Chairman Halloran and Drs. Schaefer, Carter, Shute and Obaisi were not personally involved in the care of Plaintiff's hands or ganglion cysts. (Doc. 147 at ¶ 32.) Halloran has never seen or spoken with Plaintiff and did not examine Plaintiff's hands or ganglion cysts at any

time. (*Id.* at ¶ 33.) Halloran did not direct or supervise the care provided to Plaintiff. (*Id.*) On July 17, 2013, Plaintiff sent Halloran a notarized affidavit and letter describing the pain and swelling he had in his hands for which he was not receiving proper medical care. (Doc. 182-1, pg. 146 at ¶ 9.) Halloran does not recall receiving any letters from Plaintiff regarding the medical treatment of his hands. (Doc. 147 at ¶ 34.)

Doctor Schaefer did not perform a medical examination of Plaintiff's hands. (Doc. 147 at ¶ 36.) Doctor Schaefer did not direct or supervise the care provided to Plaintiff. (*Id.*) Plaintiff wrote a letter, dated October 6, 2011, to Dr. Schaefer requesting immediate medical care for his hand. (Doc. 182-1, pg. 146 at ¶ 10.) Doctor Schaefer does not recall receiving any letters from Plaintiff regarding the medical treatment of his hands. (Doc. 147 at ¶ 38.)

Doctor Shute did not perform a medical examination of Plaintiff's hands. (Doc. 147 at ¶ 41.) Doctor Shute did not direct or supervise the care provided to Plaintiff. (*Id.*) Doctor Shute does not recall receiving any letters from Plaintiff regarding the medical treatment of his hands. (Doc. 147 at ¶ 43.)

Doctor Carter did not perform a medical examination of Plaintiff's hands. (Doc. 147 at ¶ 46.) Doctor Carter did not direct or supervise the care provided to Plaintiff. (*Id.*) Doctor Carter does not recall receiving any letters from Plaintiff regarding the medical treatment of his hands. (Doc. 147 at ¶ 48.)

Doctor Obaisi did not perform a medical examination of Plaintiff's hands and provided no treatment as to his hands or ganglion cysts. (Doc. 147 at ¶ 50.) Doctor Obaisi did not direct or supervise the care provided to Plaintiff for his hands or ganglion cysts. (*Id.*) On September 12, 2012, Plaintiff sent Dr. Obaisi a notarized affidavit describing the pain and swelling he had in his hands for which he was not receiving proper medical care. (Doc. 182-1, pg. 146 at ¶ 11.)

Doctor Obaisi does not recall receiving any letters from Plaintiff regarding the medical treatment of his hands. (Doc. 147 at ¶ 52.)

**Discussion**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir.2005) (citations omitted). In addition, the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001).

To succeed on a deliberate indifference to a serious medical need claim, a plaintiff must demonstrate (1) that his medical need was objectively serious; and (2) that the defendant was actually aware of the serious risk of harm, but refused to take reasonable steps to address it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

<u>**Serious Medical Condition**</u>

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005); *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). The "objectively seriousness" of the inmate's medical condition in situations of not receiving medications is not the medical condition itself, but is the medical consequences of not receiving the medications. *Jackson v. Pollion*, 733 F.3d 786, 790

(7th Cir. 2013). "No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat a condition without providing evidence that the failure caused injury or a serious risk of injury." *Id.* However, prolonged pain stemming from a delay or absence of proper medical treatment may support a claim of deliberate indifference. *See Petties v. Carter*, 795 F.3d 688, 691 (7th Cir. 2015) (collecting cases and holding that prolonged and unnecessary pain resulting from a significant delay in effective medical treatment may support a claim of deliberate indifference).

In the instant case, Plaintiff injured his hand or hands, resulting in at least one ganglion cyst that enlarged over time and, according to Plaintiff, caused severe pain and continues to cause pain to date. In addition, Plaintiff did require and receive medical care for the injury and cyst. The Wexford Defendants' opine that that the cyst healed on its own (as they usually do) and that the cyst does not constitute a "serious" medical condition. Plaintiff counters that the pain he endured at the time and continues to endure from the lack of proper medical treatment demonstrates that the medical condition was "serious." In light of the disputed facts related to whether Plaintiff received the pain medications and other treatments (warm/cold packs) and the alleged resulting and ongoing pain, a genuine issue of material fact exists as to whether Plaintiff's medical condition was a "serious" medical condition for purposes of Section 1983 liability.

**Deliberate Indifference**

Prison officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v.*

11

*Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). Claims of deliberate indifference to a prisoner's medical needs are examined differently depending on whether the defendant is a medical professional or a lay person. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Lay persons who are not responsible for administering medical care are entitled to rely on and defer to the judgment of medical professionals. *Id.* at 483; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). However, a lay person may be found to have been deliberately indifferent to an inmate's medical needs if he has actual knowledge or has reason to believe that medical personnel are not treating or mistreating a prisoner. *King*, 680 F.3d at 1018.

As to medical defendants, "[t]o infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also, Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, a "medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

**State Defendants**

Here, Plaintiff argues that the lay State Defendants, Warden Hardy, Assistant Warden Edwards and Health Care Administrator Brown-Reed were aware of Plaintiff's injury and that he

12

was not receiving proper medical care through the grievances he filed and/or letters that he sent to these Defendants regarding his ongoing medical needs. A prison official, put on notice of a constitutional violation by a prisoner's communication, may or may not be potentially liable, depending upon whether, among other things, the official had responsibility for correcting the problem, had authority to correct it, or reasonably relied on someone else to do so. *See, e.g., Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition").

Defendants counter that it is undisputed that Plaintiff was receiving medical care and that they had the right to rely on and defer to the medical judgment of the treating physicians. However, the Defendants do not argue, and have not demonstrated, that they actually relied on the medical treatment that Plaintiff was receiving in not taking any action to make sure Plaintiff received proper medical treatment. In fact, the parties dispute whether Plaintiff's grievances are genuine and whether they were actually submitted, and Plaintiff avers that the grievances were simply ignored by these Defendants. Based on the undisputed facts before the Court, it cannot be determined whether these Defendants had actual knowledge that Plaintiff was allegedly not receiving proper medical treatment through the grievances and/or letters the Defendants received and whether they were deliberately indifferent to that known fact.

As to State Defendant Nurse Encarnacion, the undisputed facts demonstrate that Plaintiff spoke with Encarnacion the day that he injured his hand(s) and that Plaintiff was seen by a doctor within three days of the injury. Plaintiff has not demonstrated that Encarnacion was

deliberately indifferent to any serious medical condition as to his hand(s) through his one conversation with her regarding his injury on the day that it occurred. Accordingly, summary judgment is granted as to Encarnacion.

**Wexford Defendants**

The undisputed facts demonstrate that Drs. Shute and Crater did not perform a medical examination of Plaintiff's hands, did not direct or supervise the care provided to Plaintiff, and/or have knowledge that Plaintiff believed he was not receiving proper medical care. Accordingly, Plaintiff has not demonstrated that Drs. Shute and Carter were deliberately indifferent to any medical needs and summary judgment is granted in Dr. Shute's and Dr. Carter's favor.

Doctors Schaefer and Obaisi and Director Halloran were not personally involved in the care of Plaintiff's hands or ganglion cysts and did not direct or supervise the care provided to Plaintiff. However, Plaintiff argues that these Defendants became aware that he was not receiving proper medical care via the letters and/or affidavits that he sent each Defendant. While Defendants dispute every receiving the letters, the presence of the letters and the dispute as whether they were received results in a genuine issue of material fact as to whether these Defendants were aware that Plaintiff did not believe he was receiving proper medical care and these Defendants, who had the ability and duty to correct the situation, failed to do so. In addition, these Defendants could not have relied upon the medical treatment that Plaintiff was receiving in determining whether further action was required when they dispute ever having knowledge of any issue with the care provided. Accordingly, summary judgment must be denied as to these Defendants.

Lastly, Wexford argues that Plaintiff has failed to produce any evidence of a Wexford policy to delay or hinder access to medical care within Stateville. Wexford, as a corporation

14

contracted with the State to provide essential governmental services, can be held liable under § 1983 only if it itself maintained "an unconstitutional policy or custom" that caused a plaintiff's injury. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789-92 (7th Cir. 2014); *see also Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)). The policy need not be an actual written policy and may be demonstrated with evidence of a widespread practice that is so permanent and well-settled as to constitute a custom or practice. *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012).

Plaintiff has not produced evidence of a written policy to delay or hinder medical treatment. However, Plaintiff has produced evidence of practices by Wexford in an effort to save money and increase its profitability that Plaintiff avers resulted in his (and other inmates) being denied proper medical treatment and/or causing delays in medical treatment. This evidence includes the Final Report of the Court Appointed Expert in *Lippert v. Godinez*, No. 10 C 4603 (N.D. Ill.) (Doc. 339), finding that leadership issues and staffing deficiencies at Stateville had a negative impact on medical treatment at Stateville; and two monitoring visit reports of Stateville from July 2011 and April 2013, both finding staffing shortages with the April 2013 report noting that staff reported that they are discouraged by Wexford from ordering certain medications and supplies due to cost and staff does not feel that Wexford supports the medical providers' judgments. (Doc. 182, Exhs. O, P and Q). Wexford fails to address this evidence in its briefs. In light of the evidence produced, a genuine issue of material fact exists as to whether Wexford has an unwritten policy that resulted in Plaintiff not receiving the medications/supplies he was prescribed and/or caused delays or hindered his ability to receive proper medical care. Accordingly, summary judgment is denied as to Wexford.

**Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks partial summary judgment on his "claim" that the denial of his medical care, caused at least in part by his grievances not being addressed properly, violated his right to Due Process. Plaintiff's motion is denied. First, Plaintiff's claim of deliberate indifference to a serious medical condition is addressed under the Eighth amendment, not the Due Process Clause. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Furthermore, an inmate does not have a substantive due process right to a grievance procedure. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The only right attached to a grievance process is a procedural one, *i.e.*, an inmate must be allowed to exhaust his administrative remedies in order to pursue his right to access to the courts. *See Antonelli*, 81 F.3d at 1430; *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Here, Plaintiff only alleges his dissatisfaction with the grievance process, not that he has been denied access to the courts. Accordingly, Plaintiff's motion is denied.

**Conclusion**

For the foregoing reasons, Defendants' motions for summary judgment [146, 156] are granted in part and denied. The motions are granted as to Defendants Jennifer Encarnacion, Dr. Shute and Dr. Carter. The motions are denied as to all other Defendants. Plaintiff's motion for partial summary judgment [ 145] is denied. Defendants' motion to strike [177] is denied.

Date:   February 22, 2016                              _____
                                                                            United States District Judge